UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

YOWAB BEN-ISRAEL,

    Petitioner,

v.                                          Case No. 1:21cv150-AW-HTC

SECRETARY DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Yowab Ben-Israel, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254, challenging his conviction for robbery with a firearm, aggravated assault with a firearm on a law enforcement officer, and possession of a firearm by a convicted felon, in the circuit court of Alachua County, Florida, case 2015-CF-1606. ECF Doc. 1. After considering the petition, the record, the State's response, ECF Doc. 6, and Petitioner's reply, ECF Doc. 7, the undersigned recommends the petition be DENIED without an evidentiary hearing.

I.    **BACKGROUND**

    A.    **Offense and Conviction**

Petitioner, then a twice-convicted felon, was charged with robbing the Gainesville post office with a gun in broad daylight, initially without a face covering, fleeing on a bicycle, and, after being cornered by police, pulling the gun out of his

waistband and aiming it at a deputy before being shot by law enforcement. ECF Doc. 6-4 at 10–11.

After a jury trial, Petitioner was found guilty and sentenced to life in prison on the armed robbery count, 15 years consecutive on the aggravated assault on a law enforcement officer count; and 3 years concurrent to the armed robbery count on the felon in possession count. ECF Doc. 6-1 at 135–40 (Judgment); ECF Doc. 6-2 at 91 (Sentencing transcript). As will be discussed herein, Petitioner brings two grounds for relief, both of which relate to the presence of a juror, Juror Simmons, on the panel.

**B.     Postconviction History and Timeliness Analysis**

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a petition must be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1] Additionally, the one-year time period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

---

[1] Although there are other "trigger" dates under the AEDPA, none of those apply here. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

Case No. 1:21cv150-AW-HTC

Petitioner appealed his judgment to the First District Court of Appeals ("First DCA"), which affirmed *per curiam* without a written opinion on March 6, 2018. ECF Doc. 6-9 at 3.[2] He did not seek discretionary review in the Florida or United States Supreme Court, ECF Doc. 1 at 2-3, so the conviction became final 90 days after the First DCA's *per curiam* opinion, or on June 4, 2018.[3] *Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).

The AEDPA one-year limit began running the next day and ran until February 19, 2019 (260 days), when Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. *See* ECF Doc. 6-12 at 59. The post-conviction motion was continuously pending until July 14, 2021, when the First DCA issued its mandate affirming the circuit court's decision. ECF Doc. 6-13 at 2. The AEDPA clock resumed running the next day and ran for 56 days until the instant petition was filed on September 9, 2021, for a total of 316 days. ECF Doc. 1 at 15.

---

[2] Petitioner moved for a written opinion, which was denied on May 31, 2018, ECF Doc. 6-10 at 7. Courts disagree on whether such a motion delays the finality date of the conviction. Compare *Holybrice v. Sec'y, Dep't of Corr.*, 2019 WL 11505330, at *3 (M.D. Fla. Feb. 28, 2019) with *Ferro v. Inch*, 2022 WL 1443217, at *5–6 (S.D. Fla. May 6, 2022). The undersigned declines to reach this issue, however, as the Petition is timely even if the motion for written opinion is not deemed to delay the finality date.
[3] Respondent put June 14, 2018, as the finality date, ECF Doc. 6 at 3, rather than June 4, 2018, but this appears to be a typographical error, as June 4, 2019, is ninety (90) days after March 6, 2018.

Case No. 1:21cv150-AW-HTC

Thus, the petition was timely filed, and Respondent does not dispute the timeliness of the petition.

## II. LEGAL STANDARDS

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id*. A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable

Case No. 1:21cv150-AW-HTC

manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

### III.   DISCUSSION

#### A.   Ground One: Trial Court Denied Petitioner a Fair and Impartial Jury

In the petition, Petitioner identifies Ground One as follows: "An actually biased, and prejudiced jury set on the jury panel." ECF Doc. 1 at 5. He does not provide any facts to support this claim in the petition. In his Reply, however, Petitioner discusses four jurors, Mitchell, May, Freeney, and Simmons and argues they are actually biased. Only Petitioner's argument as to Simmons, however, is addressed herein because defense counsel used his peremptory challenges to strike Mitchell, May, and Freeman. Thus, those jurors are not pertinent to this Report and Recommendation. After using all seven peremptory challenges, counsel requested additional peremptory challenges based on the prior denied for cause challenges. ECF Doc. 6-3 at 464–65. The court declined, finding that most of the decisions were

not on "the borderline" and he did not "see any reason to do any more." *Id.* at 465. As discussed below, Petitioner's claim that Simmons was actually biased was not exhausted and also fails on the merits.

        1.      <u>Failure to Exhaust</u>

As an initial matter, Petitioner has not exhausted this claim because he did not raise it as a federal claim in the state courts. "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each* appropriate state court ..., thereby alerting that court to the federal nature of the claim." *Id.* (emphasis added) (citations omitted). It is not, "sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dep't of Corr.,* 377 F.3d 1317, 1344 (11th Cir. 2004). Instead, "the petitioner must have put the state court on notice that he intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015).

In Petitioner's Initial Brief for his direct appeal, Petitioner argued the trial court erred in denying appellant's motion to strike prospective jurors Mitchell, May,

Case No. 1:21cv150-AW-HTC

Freeney and Simmons for cause. The problem is Petitioner framed the issue solely as one based on state law. ECF Doc. 6-6. Petitioner cited to, and argued, only Florida law as a basis for the claim. He did not label the claim as a "federal" claim, cite a single federal case, or even mention any federal statutory or Constitutional basis for this claim on direct appeal. *Id.* Therefore, he did not fairly present a federal issue to the First DCA on direct appeal.

Petitioner claims in the petition that he also exhausted this claim by raising it in his 3.850 motion. ECF Doc. 1 at 6. Petitioner is incorrect. Although he did raise the issue in 3.850 motion, the state court rejected the claim as procedurally defaulted. Specifically, the state circuit court found the claim raised an issue that was or could have been litigated on direct appeal. ECF Doc. 6-12 at 64.

A federal court will not consider a claim that is procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). The rule barring from 3.850 review issues that could have been raised on direct appeal has been found by the Eleventh Circuit to be an adequate and independent state ground. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260–61 (11th Cir. 2005). Also, because there is no indication the First DCA denied relief on this ground on the merits (no briefs were filed, and the opinion affirming

was *per curiam* and contained no written explanation), this Court may presume the First DCA's denial was based on a procedural bar. *See, e.g.*, *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) (finding that where "the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."). Therefore, Petitioner failed to exhaust this claim.

### 2. Jury Panel Claim Would Fail on the Merits

Even if the Court could consider this claim on the merits, Petitioner would not be entitled to relief. Having to use peremptory challenges to remove jurors who should have been removed for cause does not, by itself, constitute a violation of the constitutional right to an impartial jury. *Spivey v. Head*, 207 F.3d 1263, 1274 (11th Cir. 2000) (citing *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.")); *United States v. Martinez–Salazar*, 528 U.S. 304 (2000) (same). Thus, the fact that defense counsel had run out of peremptory challenges by the time he reached Juror Simmons does not mean the Sixth Amendment was violated, even if the peremptory challenges were spent on jurors the court should have been removed for cause. *Ross*, 487 U.S. at 88 ("Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.").

Case No. 1:21cv150-AW-HTC

Instead, Petitioner would have to show that Juror Simmons was actually biased against him, which he has not done. "The constitutional standard for juror impartiality is whether the juror 'can lay aside his opinion and render a verdict based on the evidence presented in court.'" *United States v. Simmons*, 961 F.2d 183, 184 (11th Cir. 1992) (quoting *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984)). When a juror's impartiality is challenged, the party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993). The allegations, however, "must be something more than mere speculation." *United States v. Barshov*, 733 F.2d 842, 851 (11th Cir. 1984). "The Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Lockhart v. McCree,* 476 U.S. 162, 184 (1986).

In the Reply, Petitioner argues Simmons was actually biased because Simmons was an acquaintance with one of the deputies who testified at trial, Deputy Martin Krpan *and* because Simmons stated during voir dire that he would follow the "blue code," meaning the code of law enforcement officers. There is nothing in the

record to show, however, that Simmons was not able to be impartial despite those matters. Indeed, the converse is true – the record shows Simmons was impartial.

Although Simmons admitted he knew Deputy Krpan and that the Deputy was a "friend," he also stated that he had not talked to the Deputy for 2–3 years, and that he would not take his word over anyone else's. ECF Doc. 6-3 at 414, 416. Simmons stated his relationship with the Deputy would not impact his ability to be fair to either side "at all." *Id.* at 359. When Simmons was asked whether he would believe the Deputy over a stranger, he said, "not necessarily," "I take everyone on face value," and further elaborated that he "may believe something [Krpan] says less" because of conversations Simmons has had with him. *Id.* at 415. Simmons explained that he would not trust Krpan more than a different person, even one he did not know. *Id*. at 416. Moreover, although Krpan testified at trial, his role in the investigation was primarily to photograph and collect evidence at the scene. ECF Doc. 6-4 at 297–303, 908–14, 943–45. Thus, Deputy Krpan's testimony consisted primarily of identifying exhibits collected at the crime scene. *Id.* There is no evidence Simmons' relationship with Deputy Krpan resulted in actual bias. *See United States v. Hampton*, 2011 WL 13175098, at *2 (M.D. Fla. Apr. 4, 2011), *aff'd*, 484 Fed. Appx. 363 (11th Cir. 2012) ("The Court will not…presume bias just because a juror knows or at one time served as a law enforcement officer.").

Similarly, the statements Simmons made about the "blue code" are far from sufficient to show that Simmons was actually biased. First, when Simmons was

Case No. 1:21cv150-AW-HTC

asked about his opinion about the Black Lives Matter movement, he explained, "I do see both sides …. So I definitely can see both sides of this. There's -- obviously some error was made on both sides, and each case is obviously different from the others." ECF Doc. 6-3 at 399. When the prosecutor followed up with, "Okay. Do you feel like you'd be able to fairly and impartially review the evidence and make a determination in a case by case?", Mr. Simmons answer, "Absolutely." *Id.* Also, when defense counsel asked whether Simmons would give extra credibility to someone who happens to be a law enforcement officer, Simmons stated "No. I view everyone on themselves. Not their job. You know, because of the law enforcement, you know, the code, I would take everything he says with a grain of a salt as well, depending on the testimony involved." ECF Doc. 6-3 at 452–53. When defense counsel followed up and asked Simmons to explain what he meant by the "code", Simmons explained that the code was that "LEOs always have each other's back" and he would likely do the same thing if he was in law enforcement. *Id.*

  Based on this colloquy, Simmons was saying he would be *more* skeptical of a police officer's testimony because the police officer might just be following the "blue code" rather than testifying truthfully. Thus, rather than showing "actual bias" against Petitioner, Simmons' answers show he could be impartial. Petitioner is not entitled to habeas relief on this claim.

**B. Ground Two: Ineffective Assistance of Counsel for Failing to Properly Object to the Jury Panel Which Resulted in an Actually Biased Juror Being Empaneled**

As with Ground One, Petitioner offers no factual allegations explaining this claim in his Petition. However, in his Reply, he argues, defense counsel "failed to preserve, for appellate review, Petitioner's challenges for cause, and further failed to challenge the jury panel." ECF Doc. 7 at 21. Although the Respondent argues this issue is not exhausted and is procedurally barred, the undersigned finds otherwise. Petitioner raised this claim in the 3.850 motion, and the state court denied the claim on the merits. ECF Doc. 62-67. Thus, contrary to Respondent's position, the state court did not deny the claim as an attempt to obtain a second appeal. ECF Doc. 6 at 23.

Regardless, Petitioner is not entitled to relief on this claim on the merits. An ineffective assistance of counsel claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing

professional norms and that the challenged action was not sound strategy. *Id.* at 688–89.

To show counsel's performance was unreasonable, a defendant must show "no competent counsel would have taken the action that his counsel did take." *Hollis v. United States*, 958 F. 3d 1120, 1122 (11th Cir. 2020) (citation omitted). It is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy. *Harrington*, 562 U.S. at 111. To establish prejudice, a defendant must show, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F. 3d 1248 (11th Cir. 2020) (quoting *Harrington*, 562 U.S. at 112). A petitioner must allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. A petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations of prejudice are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Applying *Strickland*, the circuit court rejected this claim, finding it to be conclusively refuted by the record. Because the First DCA issued a *per curiam* affirmance of the denial of the Rule 3.850 motion, this Court will "look through" the First DCA decision to the circuit court's order, since it was the last related state-court decision that provides a relevant rationale and presume that the unexplained

decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The circuit court's rejection was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Petitioner cannot meet either prong of *Strickland*. First, Petitioner's claim that counsel failed to properly object to the cause challenges or preserve the issue for appeal is belied by the record. After Petitioner exhausted his peremptory challenges, defense counsel asked for more strikes based on the court's prior denial of cause challenges and made clear he was preserving the issue for appeal. ECF Doc. 6-3 at 464–66.

Second, Petitioner's claim that counsel did not object to the jury panel is also belied by the record. After the panel was selected, counsel asked the court if he could "lay a record of for the jury panel," and let the court know the defense was not "affirmatively accepting the panel." ECF Doc. 6-3 at 460–70. Counsel stated that the defense "want[s] to preserve all objections that we made to the manner of the questioning." *Id.* The court, in response, stated that everything was properly preserved. *Id.*

Finally, Petitioner cannot show he was prejudiced by any mistakes counsel made during the jury selection process resulting in the placement of Simmons on the jury because, as discussed in Ground One, Petitioner has not shown that Simmons

was actually biased against him. Therefore, Petitioner has not met either prong of *Strickland* and is not entitled to habeas relief on this Ground.

## IV. CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this Report and Recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Ben-Israel*, 2015-CF-1606, ECF Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 10th day of February, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.